FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2026 JAN 23  AM 8: 49

# UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DENNY JASON SHROVE,
BRYAN JAMES HACKLEMAN,
JONATHAN BURTON,
CAINEN JAMES TAYLOR,
NICOLE RAE PHIPPS,
ALYSHA ANN DAHL, and
GREGORY KEITH MCCOY,

        Defendants.

**CRIMINAL COMPLAINT**

Case Number: _26MJ-1-SWS_

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

## COUNT ONE

On or about September 24, 2025, in the District of Wyoming, the Defendant, **GREGORY KEITH MCCOY**, did knowingly, intentionally, and unlawfully possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance and the Defendant, **DENNY JASON SHROVE** did aid and abet him in doing so.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. §2.

## COUNT TWO

On or about October 17, 2025, in the District of Wyoming, the Defendants, **DENNY JASON SHROVE, BRYAN JAMES HACKLEMAN, JONATHAN BURTON, NICOLE RAE PHIPPS** and **ALYSHA ANN DAHL**, did knowingly, intentionally, and unlawfully possess with intent to distribute a mixture or substance containing a detectable amount of

methamphetamine, a Schedule II controlled substance, and they each aided and abetted the other in doing so.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. §2.

## COUNT THREE

On or about November 3, 2025, in the District of Wyoming, the Defendant, **CAINEN JAMES TAYLOR**, did knowingly, intentionally, and unlawfully possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and the Defendant, **DENNY JASON SHROVE** did aid and abet him in doing so.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. §2.

## COUNT FOUR

On or about November 10, 2025, in the District of Wyoming, the Defendants, **BRYAN JAMES HACKLEMAN** and **ALYSHA ANN DAHL**, did knowingly, intentionally, and unlawfully possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and they each aided and abetted the other in doing so.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. §2.

## COUNT FIVE

On or about November 13, 2025, in the District of Wyoming, the Defendant, **DENNY JASON SHROVE**, did knowingly, intentionally, and unlawfully possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

## COUNT SIX

On or about November 13, 2025, in the District of Wyoming, the Defendant, **NICOLE RAE PHIPPS**, did knowingly, intentionally, and unlawfully possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

2

I further state that I am a Special Agent with the Division of Criminal Investigation (DCI) and that this complaint is based on the following facts:

*(See attached Sworn Statement)*

Continued on the attached sheet and made a part hereof.

_____
Signature of Complainant
JOHN MILES

Sworn and attested by the applicant before me by telephone, bearing a previous signature submitted by email communication in accordance with the requirements of Fed. R. Crim. P. 4.1,

01-23-2026   at  8:43 a.m.   at    Cheyenne, Wyoming
_____       _____
Date                                   City and State

HON. SCOTT P. KLOSTERMAN
United States Magistrate Judge
_____       _____
Name & Title of Judicial Officer       Signature of Judicial Officer

3

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
SPECIAL AGENT JOHN MILES
U.S. v. SHROVE, ET AL.**

<u>I, John Christopher Miles, after being duly sworn, hereby depose and state as follows:</u>

1.    I am a full-time, sworn, certified law enforcement officer with the State of Wyoming. I am employed with the Wyoming Attorney General's Office, Division of Criminal Investigation (DCI) as a Special Agent (SA) assigned to the Central Enforcement Team (CEET). I have acted in that official capacity at all times mentioned herein. I am a peace officer as defined in Wyoming Statute (W.S.) §§ 7-2-101 (a)(iv)(D), 6-1-104 (vi) (D), 9-1-613 and 35-7-1045.

2.    I have worked in this capacity as a Special Agent since December 4, 2023, and have held an active Law Enforcement Certification since 2011. I am currently assigned to investigate violations of the Wyoming Controlled Substance Act and other criminal violations as assigned.

3.    I have over 14 years of law enforcement experience. I have also been a Certified Law Enforcement Officer with the Rio Rancho Police Department (Rio Rancho, NM) as a detective and a police officer from 2021 to 2023, as well as the Santa Fe Police Department (Santa Fe, NM) as a detective and a police officer from 2011 to 2021. I held positions assigned as a detective to the Criminal Investigations Division, Property Crimes Unit, Criminal Intelligence Unit, and Crimes Against Children Unit/Special Victims Unit (SVU) where Affiant's duties included but were not limited to: investigating human trafficking, narcotic violations, counterfeit currency, weapon violations, bomb threats, threats to infrastructure, active shooters, and immediate/potential threats of mass casualties, domestic terrorism, transnational and domestic criminal organizations, drug trafficking organizations, serial crimes against persons, suspicious activity at educational and government facilities, and to investigate organized crime. As well as crimes committed against children, aggravated assault and battery, criminal sexual crimes, internet

1

crimes against children, homicides, burglaries/larcenies, white collar crime, embezzlement, forgery, fraud, and auto thefts. Your Affiant has prepared numerous search warrants, arrest warrants, and subpoena duces tecum. Your Affiant has received formal training in the investigation of the aforementioned crimes, but not limited to: Wyoming Division of Criminal Investigation, Wyoming Law Enforcement Academy, New Mexico Department of Public Safety Law Enforcement Academy, Rio Rancho Police Department, Santa Fe Police Department, and advanced training at specialized schools/seminars and conferences. I have held an advanced Police Officer Certification with the State of New Mexico due to Your Affiant's knowledge and experience as a law enforcement officer. I currently hold a Wyoming Professional Peace Officer Certification. I also have a Bachelor's Degree of Science in Criminal Justice.

4.    I have over 4,300 completed training hours recognized by the Wyoming Peace Officer Standards and Training (POST) Commission, with approximately 267 of those POST-related hours encompassing aspects of the possession, consumption, sale, and storage of controlled substances.

5.    My training has included and continues to encompass the identification of various types of controlled substances by sight and odor; the way in which controlled substances are packaged, marketed, and consumed; clandestine drug laboratories and the illegal manufacture of drugs; the use of field drug test kits; informant handling; evidence handling; search and seizure law; laws involving conspiracy; surveillance and investigative techniques; the investigation of drug related criminal activity; the investigation of drug related criminal organizations; drug smuggling/trafficking; undercover and surveillance operations; interception of communications, and other areas of investigation involving persons violating the controlled substance statutes of the State of Wyoming. Additionally, I have been the Affiant of, and/or participated in, numerous

2

search warrants involving the seizure of controlled substances, documents associated with the sale of controlled substances, and proceeds from the sale of illicit drugs.

6.    I have received specialized training in the investigations of illegal narcotics. I have investigated numerous felony and misdemeanor criminal cases.  I have participated in investigations of individuals and organizations for violations of federal and state narcotics laws, conducted and participated in surveillance, introduced confidential informants, and participated in investigations that included the interception of wire and electronic communications.  I have executed search and seizure warrants where assets, documents, records, and controlled substances have been located and seized.  I also have had experience in debriefing defendants, participant witnesses, informants, and other persons who have personal knowledge of the distribution of controlled substances.

7.    In the course of my duties, I have had many occasions to speak with people who used, manufactured, transported, and/or distributed illegal controlled substances in various regions of the United States. Some of these people have described their techniques and practices used to conduct their business, acquire drugs, and sell drugs while avoiding detection and apprehension by law enforcement.  As part of my duties, I have frequently interviewed or received information from persons who were involved in criminal activity, or who are citizen informants trying to give law enforcement officers information about criminal activity.  I have been trained on how to establish the reliability of said persons.

8.    Based on this training and experience, I am familiar with current drug trends, including smuggling, packaging, concealment techniques, common drug language, conspiracy techniques, including the use of cellular and digital communications devices, common weights and measurements, and drug identification.

3

9.     The information contained within this affidavit is based on my personal observations, training, and experience, as well as information relayed to me by other law enforcement officers involved in this investigation. I have not included each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

10.     The Casper office of the Wyoming Division of Criminal Investigation has been investigating an ongoing drug trafficking organization operating in Wyoming and Colorado. DCI has been working in conjunction with the Drug Enforcement Agency (DEA), Homeland Security Investigations (HSI), and multiple state and local agencies in Wyoming. Agents have identified Bryan HACKLEMAN, Alysha DAHL, Cainen TAYLOR, Gregory MCCOY, Nicole PHIPPS, Denny SHROVE, Jonathan BURTON, and numerous other known and unknown co-conspirators operating together to distribute methamphetamine, fentanyl, cocaine, and other controlled substances obtained from Colorado in the Natrona, Carbon, Campbell, Laramie, and Albany County areas of Wyoming. Agents have utilized multiple investigative techniques, including interviews, controlled buys, electronic surveillance, physical surveillance, court order authorizing the interception of communications, search warrants, and PEN orders. Agents have seized approximately 1,429.7 grams of methamphetamine, 25.3 grams of fentanyl pills, 16.4 grams of cocaine, 92.1 grams of psilocybin mushrooms, 90.3 grams of marijuana, 4.4 grams of fentanyl powder, and 67.5 grams of heroin in this investigation.

11.     From January 2025 through July 2025, multiple confidential sources and confidential informants were interviewed, who implicated HACKLEMAN and DAHL in distributing controlled substances. SHROVE was implicated as distributing controlled substances and supplying HACKLEMAN and DAHL.

4

12.    On July 23, 2025, SA Miles obtained a search warrant to place an electronic tracking device on HACKLEMAN's Chevrolet Tahoe. The tracking device was placed on the vehicle on July 24, 2025.

13.    On July 23, 2025, SA Miles and SA Lougee conducted a Mirandized interview with a confidential source, CS 88084. CS 88084 substantially stated they had been obtaining up to ounce quantities of methamphetamine from DAHL and HACKLEMAN and purchased from them 6 to 7 times. On August 4, 2025, SA Miles spoke with SGT Gallegos with the Albany County Sheriff's Office, who informed SA Miles he had stopped SHROVE with his girlfriend, PHIPPS, on August 1, 2025, in the Laramie, WY area. SA Miles observed the tracker data show HACKLEMAN's vehicle in the Laramie, WY area in the early hours of August 2, 2025. On August 8, 2025, SA Ford and SA Willis conducted a Mirandized interview with a confidential source, CS 2411. CS 2411 substantially stated that SHROVE was distributing a lot of fentanyl and methamphetamine between Casper, Cheyenne, Rawlins, and Laramie, Wyoming. As well, Cainen TAYLOR worked for SHROVE distributing methamphetamine, and TAYLOR was acquiring a quarter pound of methamphetamine at a time.

14.    On August 8, 2025, and August 11, 2025, SA Miles applied for and was granted a search warrant/court order for a Pen Register and Trap and Trace for the phone number of Bryan HACKLEMAN, ending in 1608.

15.    On August 12, 2025, SA Miles applied for and was granted a search warrant to place an electronic tracking device on HACKLEMAN's 2002 White Chevrolet Silverado. The tracker was installed on August 13, 2025, at approximately 3:24 am.

16.    On September 16, 2025, SA Miles observed a phone number ending in 3279 over HACKLEMAN's Pen Register, which had 10 contacts since August 8, 2025, and a phone number

5

ending in 4501, which had 15 contacts since August 20, 2025. Both numbers were determined to be utilized by Gregory MCCOY through law enforcement databases and open-source databases.

17.    On September 23, 2025, SA Ford and SA Willis conducted a Mirandized interview with a confidential source, CS 162093. CS 162093 substantially stated they had been obtaining approximately 7 grams of methamphetamine a week from TAYLOR since around July 2025. TAYLOR was also reported to be prospecting for the Vagos Outlaw Motorcycle Gang.

18.    On September 24, 2025, SA Ford informed SA Miles that a black colored Chrysler 300 was seen at Denny SHROVE's new residence in Sinclair, Wyoming. Local Law Enforcement knew this vehicle to be previously involved in the use and/or distribution of controlled substances. Carbon County Sheriff's Deputies stopped the vehicle after observing it not stop at a stop sign. Deputies deployed a K-9 to perform a free air sniff of the vehicle during the traffic stop and received a positive alert from the K-9 indicating controlled substances inside the vehicle. Deputies asked the occupants to exit the vehicle. The female passenger complied with the commands and exited the vehicle. Once the female passenger was out of the vehicle, the male driver fled in the vehicle from deputies, and the male was the sole occupant in the vehicle at the time he fled. Prior to the male fleeing, he was identified as Gregory MCCOY, who mentioned he was going to Casper, WY.

19.    After a pursuit of the vehicle, MCCOY gave up and was taken into custody.  During the pursuit, MCCOY was observed by pursuing officers throwing multiple items out of the vehicle, who was also the sole occupant of the vehicle at the time. Approximately 1,020 grams of methamphetamine, 67.5 grams of heroin, 13.2 grams of fentanyl pills, less than 1 gram of LSD, and 50.6 grams of marijuana were discovered in the vehicle and from items thrown out of the vehicle. The methamphetamine was located in the trunk of the vehicle. MCCOY 's phone number

had been observed as a frequent contact in HACKLEMAN's PEN register. Agents knew MCCOY to be out of the Casper, WY area. The Wyoming Forensic Laboratory later confirmed the controlled substances to be the controlled substances listed above.

20.    During the activation of the PEN Registry and Trap and Trace Order for HACKLEMAN's phone, Agents identified SHROVE's phone number ending in 9988 as being in communication with HACKLEMAN. Agents positively identified SHROVE's number through law enforcement database systems and open-source intelligence.

21.    On October 3, 2025, SA Miles obtained a court order authorizing the interception of communications for HACKLEMAN's telephone number ending in 1608.

22.    On October 10th, 2025, SA Paschke and Agents conducted electronic surveillance of HACKLEMAN / DAHL's residence located on 15th, Casper, Wyoming. Agents observed Jonathan BURTON arrive at the residence in a white Chevrolet Avalanche. Upon arriving, BURTON retrieved a box from the rear portion of the vehicle. BURTON then met with HACKLEMAN at the front of HACKLEMAN'S vehicle, where it appeared an object was exchanged.

23.    On October 10, 2025, through the use of the court authorized intercept Agents learned that HACKLEMAN had been talking with SHROVE about resupplying themselves with controlled substances. SHROVE told HACKLEMAN how he had taken the biggest losses of his life in the past couple weeks and lost $17,000. Agents believe this was SHROVE and HACKLEMAN discussing how the MCCOY traffic stop and the seizure of the controlled substances were a big hit to them.

24.    On October 10, 2025, through the use of the court authorized intercept, DCI agents monitored phone communications between Bryan HACKLEMAN and Cainen TAYLOR.

7

TAYLOR inquired if HACKLEMAN had heard from SHROVE, and if HACKLEMAN had "anything going on." HACKLEMAN mentioned he was expecting to hear from SHROVE and that HACKLEMAN stated he was "about out," referring to almost being out of controlled substances. TAYLOR inquired if HACKLEMAN had seen SHROVE, and HACKLEMAN mentioned he (SHROVE) was on his way. TAYLOR mentioned that he was going to trade a vehicle of his for a large amount of marijuana and was headed to Casper, Wyoming. TAYLOR mentioned that he decided not to and was going to have to head back to Rawlins, Wyoming, because he needed to go to Utah. TAYLOR said that he was going to Utah to stay with a Vagos OMG (Outlaw Motorcycle Gang) patch holder to be trained on how they conduct business, so TAYLOR can come back and help with Vagos OMG business in Wyoming.

25.    On October 15, 2025, through the use of the court authorized intercept, Agents learned that HACKLEMAN was planning on resupplying himself and his partner, Jonathan BURTON, with controlled substances. That HACKLEMAN was planning on going to Colorado with SHROVE, where they would resupply themselves with controlled substances, primarily methamphetamine for HACKLEMAN. That SHROVE would be able to get HACKLEMAN and BURTON 8 ounces of methamphetamine for $1,600.

26.    On October 16, 2025, through the use of the court authorized intercept, Agents learned that HACKLEMAN was leaving to meet SHROVE in Laramie, WY, and from there they would go to a known area in Colorado to meet with SHROVE's supplier to obtain methamphetamine. Also, DAHL accompanied HACKLEMAN on the trip, and PHIPPS had accompanied SHROVE on the trip.

27.    CEET Agents observed HACKLEMAN and DAHL leave their residence, in their Chevrolet Tahoe, at around 2:15 pm via electronic surveillance on October 16, 2025. SA Ford

8

learned from an officer with the Sinclair, WY Police Department that SHROVE left with a female believed to be his girlfriend, Nicole PHIPPS, at around 2:00 pm. SHROVE left in a red in color Chevrolet pickup truck.

28.    On October 17, 2025, through the use of the court authorized intercept, Agents learned that BURTON was meeting up with HACKLEMAN to obtain his portion of the methamphetamine, confirming that HACKLEMAN did obtain the methamphetamine in Colorado. The two are heard discussing numbers, with HACKLEMA asking BURTON if that was right at eight, to which Burton confirmed it was. Based on my training and experience, I believe this to be referencing HACKLEMAN providing Burton with 8 ounces, or a half pound, of methamphetamine for redistribution.

29.    On October 17, 2025, SA Miles obtained a court order authorizing the interception of Denny SHROVE's telephone number ending in 9988. On October 18, 2025, through the use of the court-authorized intercept, Agents learned that SHROVE had told an unknown female that he had "re-upped"(re-supplied with controlled substances) and he would help the female out, confirming he obtained controlled substances on his trip to Colorado on October 16, 2025.

30.    On October 20, 2025, through the use of the court authorized intercept, Agents learned that BURTON and HACKLEMAN had discussed how bad the previous batch of methamphetamine was. BURTON also messaged HACKLEMAN, "This is some pretty nasty stuff this go around. If u run across anything good ill pay more for good."

31.    On October 22, 2025, SA Houser conducted a phone review of MCCOY's phone pursuant to a signed search warrant. Photos of PHIPPS' Cash App account were observed along with a photo of a QR code for a PayPal account for Denny SHROVE. There was also a photo of an insurance card displaying Denny SHROVE's name for a Chrysler 300, the same vehicle

9

MCCOY had been stopped in on September,24, 2025. That vehicle had been registered to Cainen TAYLOR.

32.    On October 24, 2025, through the use of the court authorized intercept, Agents learned that SHROVE was discussing pricing for methamphetamine with PHIPPS and another individual. SHROVE mentioned previously picking up 10 pounds of methamphetamine at a time.

33.    On October 24, 2025, through the use of the court authorized intercept, Agents learned that SHROVE called an unknown co-conspirator and told him he was in the area looking for an "elbow" (1 pound of controlled substances). The co-conspirator mentioned he could help. SHROVE inquired if it was the same price. The co-conspirator didn't know and asked if SHROVE just wanted one, and SHROVE confirmed one, and the co-conspirator said he would make some calls.

34.    On October 24, 2025, through the use of the court authorized Intercept, Agents learned that SHROVE contacted a known, but unnamed, co-conspirator. SHROVE mentioned he was going to go see about "the white girls shit" down in Denver, CO. SHROVE said he needed to get some of his "flavor", that he needed an "elbow" of his flavor. Through my training and experience, I know "white girl shit" is slang for cocaine, "flavor" in context was slang for methamphetamine, and an "elbow" is slang for a pound (lb) of methamphetamine. SHROVE was wondering if the co-conspirator could do it cheaper than 18 ($1,800), and the co-conspirator indicated maybe a tiny bit. SHROVE mentioned he was scratching to get 14 or 15. ($1,400/$1,500).

35.    On October 28, 2025, through the use of a court authorized intercept, Agents learned that SHROVE was asking PHIPPS if she had her .40 caliber gun with her. SHROVE and PHIPPS are both convicted felons and cannot lawfully possess firearms.

36.    On October 29, 2025, SA Paschke and SA Wilson were conducting electronic surveillance as well as monitoring the court authorized intercept for HACKLEMAN'S cellular phone. HACKLEMAN had traveled to Rawlins / Sinclair, Wyoming, and met with SHROVE to pick up several ounces of methamphetamine. From the intercepted calls, Agents knew BURTON had traveled from Gillette, Wyoming, to Casper, Wyoming, and would be meeting with HACKLEMAN upon his return to pick up controlled substances.

37.    HACKLEMAN returned to Casper, Wyoming, during the evening hours of October 29th, 2025. During the early morning hours on October 30th, 2025, BURTON arrived at HACKLEMAN'S residence, on W. 15th, Casper, Wyoming. Agents conducted electronic and physical surveillance of the meeting. Just prior to leaving, SA Paschke observed BURTON place an item in the driver's side bed-rail compartment of his Chevrolet Avalanche.

38.    On October 30, 2025, after BURTON left HACKLEMAN's residence, a NCSO Deputy conducted a traffic stop on BURTON'S vehicle for an observed traffic violation, near the intersection of Howard Street and Salt Creek Highway. The stop was conducted at approximately 01:15 am. CPD K9 Officer Brown arrived to assist with the traffic stop and utilized his K9 partner to conduct a free air sniff of the vehicle. Agents were advised that the K9 had indicated the presence of controlled substances in the vehicle, and a probable cause search was completed on the vehicle. During the search, no controlled substances were located. Agents later spoke with both Deputy Kaufmann and Officer Brown, who were unaware of the side bed compartment.

39.    On October 30, 2025, through the use of the court authorized intercept, Agents learned that BURTON told HACKLEMAN he got pulled over. BURTON said the dope (methamphetamine) was locked in the side compartment, and that was all that saved him.

11

40.     On November 3, 2025, through the use of the court authorized intercept, Agents learned that SHROVE told TAYLOR that a known, but unnamed, individual was going to pay $600 for "one of those", which I believe to be an ounce of methamphetamine based on my training and experience. SHROVE told TAYLOR to deliver one of the ones SHROVE already delivered to TAYLOR so SHROVE could get paid the $600 from the unnamed individual. TAYLOR agreed to do it. Based on my training and experience, $600 is consistent with a higher price for an ounce of methamphetamine. This conversation shows TAYLOR was already in possession of multiple ounces of methamphetamine supplied by SHROVE and TAYLOR intended to deliver one of those ounces to the unnamed individual.

41.     On November 4, 2025, SA Miles obtained search warrants for the persons of Bryan HACKLEMAN, Alysha DAHL, and their vehicles. SA Decker obtained a search warrant for the residence of HACKLEMAN and DAHL

42.     On November 6, 2025, SA Miles obtained search warrants for the persons of Denny SHROVE, Nicole PHIPPS, and their vehicles. On November 7, 2025, SA Ford obtained a search warrant for the residence being utilized by SHROVE and PHIPPS in Sinclair, WY, along with a shop utilized by SHROVE.

43.     On November 9, 2025, Agents learned through the court authorized intercept that HACKLEMAN was going to Sinclair, WY, to meet with a source of supply, Denny SHROVE, to obtain methamphetamine. HACKLEMAN had left to meet SHROVE in his Chevrolet Tahoe. HACKLEMAN also received just under $1,000 from Jonathan BURTON, believed to aid in HACKLEMAN's purchasing methamphetamine from SHROVE. HACKLEMAN would return in the morning hours of November 10, 2025.

12

44.    On November 10, 2025, Agents observed HACKLEMAN returning from SHROVE's residence and coordinated a stop with Wyoming Highway Patrol. At approximately 6:11 am, Wyoming Highway Patrol Troopers stopped the Tahoe with HACKLEMAN and DAHL inside the vehicle in Natrona County on Highway 220 around mile marker 106. Ultimately, approximately 205 grams of methamphetamine were located in the Chevrolet Tahoe in the third row of the driver's side of the vehicle, located within the paneling under the cup holders was a metal lock box. Within the box was the methamphetamine, a scale, cotton swabs, female looking phone case with flowers, and female jewelry. The Wyoming Forensic Laboratory later confirmed the methamphetamine was methamphetamine.

45.    On November 10, 2025, Agents conducted a search warrant at a residence on 15th Street, Casper, WY, the residence of HACKLEMAN and DAHL. Agents located large amounts of hypodermic needles and drug paraphernalia, including packaging material, pipes, containers, and scales containing drug residue.

46.    On November 12, 2025, through the use of the court authorized intercept, Agents learned that SHROVE was going to Colorado for a dentist appointment and would also be picking up controlled substances from his source of supply.

47.    On November 13, 2025, SHROVE returned to Wyoming on I-25. Agents, along with the Wyoming Highway Patrol, stopped SHROVE in Laramie County, WY, pursuant to a search warrant. Ultimately, approximately 87.8 grams of methamphetamine, 15.5 grams of cocaine, and 12.8 grams of fentanyl were located in the possession of SHROVE and from inside the vehicle he was driving. SHROVE was also the sole occupant in the vehicle. The Wyoming Forensic Laboratory later confirmed the controlled substances were the aforementioned controlled substances.

13

48.    On November 13, 2025, SA Calhoun obtained a search warrant for the residence PHIPPS was utilizing in Laramie, WY. Agents executed search warrants against PHIPPS, her vehicle, and residence. In the residence, approximately 36.8 grams of methamphetamine, .3 grams of cocaine, 5.7 grams of fentanyl, 59.9 grams of psilocybin mushrooms, and 60.4 grams of marijuana were located. The Wyoming Forensic Laboratory later confirmed the controlled substances were the aforementioned controlled substances. Additionally, 7 firearms and ammunition were found.

49.    On November 13, 2025, SA Harnish and SA Calhoun conducted a Mirandized interview with a confidential source, CS 97166. CS 97166 substantially stated that the methamphetamine located in the residence where PHIPPS was staying in Laramie, WY, was PHIPPS' methamphetamine, as well as that PHIPPS had also recently obtained fentanyl in Colorado.

**END OF SWORN STATEMENT**

## PENALTY SUMMARY

**DEFENDANT NAME:**        **DENNY JASON SHROVE**

**DATE:**        January 22, 2026

**INTERPRETER NEEDED:**        No

**VICTIM(S):**        No

**OFFENSE/PENALTIES:**

**Ct: 1    21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. §2**
(Possession with Intent to Distribute Methamphetamine)

10 Years To Life Imprisonment
Up To $10,000,000 Fine
Nlt 5 Years To Life Supervised Release
$100 Special Assessment

**Ct: 2    21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. §2**
(Possession with Intent to Distribute Methamphetamine)

0-20 Years Imprisonment
Up To $1,000,000 Fine
Nlt 3 Years To Life Supervised Release
$100 Special Assessment

**Ct: 3    21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. §2**
(Distribution of Methamphetamine)

0-20 Years Imprisonment
Up To $1,000,000 Fine
Nlt 3 Years To Life Supervised Release
$100 Special Assessment

**Ct: 5    21 U.S.C. §§ 841(a)(1), (b)(1)(B)**
(Possession with Intent to Distribute Methamphetamine)

5-40 Years Imprisonment
Up To $5,000,000 Fine
Nlt 4 Years To Life Supervised Release
$100 Special Assessment

**TOTALS:**

15 Years To Life Imprisonment
Up To $17,000,000 Fine
Nlt 5 Years To Life Supervised Release
$400 Special Assessment

**AGENT:**

John Miles, DCI

**AUSA:**

Z. Seth Griswold, Assistant United States Attorney

**ESTIMATED TIME OF TRIAL:**

6 to 10 days

**WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:**

Yes

**ARE THERE DETAINERS FROM OTHER JURISDICTIONS:**

No

## PENALTY SUMMARY

**DEFENDANT NAME:**    **BRYAN JAMES HACKLEMAN and**
**ALYSHA ANN DAHL**

**DATE:**    January 22, 2026

**INTERPRETER NEEDED:**    No

**VICTIM(S):**    No

**OFFENSE/PENALTIES:**

**Ct: 2**    **21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. §2**
(Possession with Intent to Distribute Methamphetamine)

0-20 Years Imprisonment
Up To $1,000,000 Fine
Nlt 3 Years To Life Supervised Release
$100 Special Assessment

**Ct: 4**    **21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. §2**
(Possession with Intent to Distribute Methamphetamine)

5-40 Years Imprisonment
Up To $5,000,000 Fine
Nlt 4 Years To Life Supervised Release
$100 Special Assessment

**TOTALS:**    5-60 Years Imprisonment
Up To $6,000,000 Fine
Nlt 4 Years To Life Supervised Release
$200 Special Assessment

**AGENT:**    John Miles, DCI

**AUSA:**    Z. Seth Griswold, Assistant United States Attorney

**ESTIMATED TIME OF**
**TRIAL:**    6 to 10 days

**WILL THE GOVERNMENT
SEEK DETENTION IN THIS    Yes
CASE:**

**ARE THERE DETAINERS
FROM OTHER    No
JURISDICTIONS:**

---

## PENALTY SUMMARY

---

**DEFENDANT NAME:**      JONATHAN BURTON

**DATE:**                January 22, 2026

**INTERPRETER NEEDED:**  No

**VICTIM(S):**           No

**OFFENSE/PENALTIES:**

    **Ct: 2** **21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. §2**
(Possession with Intent to Distribute Methamphetamine)

        0-20 Years Imprisonment
Up To $1,000,000 Fine
Nlt 3 Years To Life Supervised Release
$100 Special Assessment

**AGENT:**               John Miles, DCI

**AUSA:**                Z. Seth Griswold, Assistant United States Attorney

**ESTIMATED TIME OF
TRIAL:**                 6 to 10 days

**WILL THE GOVERNMENT
SEEK DETENTION IN THIS
CASE:**                  Yes

**ARE THERE DETAINERS
FROM OTHER
JURISDICTIONS:**         No

## PENALTY SUMMARY

**DEFENDANT NAME:**        CAINEN JAMES TAYLOR

**DATE:**        January 22, 2026

**INTERPRETER NEEDED:**        No

**VICTIM(S):**        No

**OFFENSE/PENALTIES:**

     **Ct: 3**  **21 U.S.C. §§ 841(a)(1), (b)(1)(C)**

     (Possession with Intent to Distribute Methamphetamine)

     0-20 Years Imprisonment
     Up To $1,000,000 Fine
     Nlt 3 Years To Life Supervised Release
     $100 Special Assessment

**AGENT:**        John Miles, DCI

**AUSA:**        Z. Seth Griswold, Assistant United States Attorney

**ESTIMATED TIME OF
TRIAL:**        6 to 10 days

**WILL THE GOVERNMENT
SEEK DETENTION IN THIS
CASE:**        Yes

**ARE THERE DETAINERS
FROM OTHER
JURISDICTIONS:**        No

## PENALTY SUMMARY

**DEFENDANT NAME:**    NICOLE RAE PHIPPS

**DATE:**    January 22, 2026

**INTERPRETER NEEDED:**    No

**VICTIM(S):**    No

**OFFENSE/PENALTIES:**

**Ct: 2    21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. §2**
(Possession with Intent to Distribute Methamphetamine)

0-20 Years Imprisonment
Up To $1,000,000 Fine
Nlt 3 Years To Life Supervised Release
$100 Special Assessment

**Ct: 6    21 U.S.C. §§ 841(a)(1), (b)(1)(C)**
(Possession with Intent to Distribute Methamphetamine)

0-20 Years Imprisonment
Up To $1,000,000 Fine
Nlt 3 Years To Life Supervised Release
$100 Special Assessment

**TOTALS:**    0-40 Years Imprisonment
Up To $2,000,000 Fine
Nlt 3 Years To Life Supervised Release
$200 Special Assessment

**AGENT:**    John Miles, DCI

**AUSA:**    Z. Seth Griswold, Assistant United States Attorney

**ESTIMATED TIME OF TRIAL:**    6 to 10 days

**WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:**    Yes

**ARE THERE DETAINERS
FROM OTHER           No
JURISDICTIONS:**

## PENALTY SUMMARY

**DEFENDANT NAME:**      **GREGORY KEITH MCCOY**

**DATE:**                  January 22, 2026

**INTERPRETER NEEDED:**   No

**VICTIM(S):**            No

**OFFENSE/PENALTIES:**

**Ct: 1**   **21 U.S.C. §§ 841(a)(1), (b)(1)(A)**
(Possession with Intent to Distribute Methamphetamine)

10 Years To Life Imprisonment
Up To $10,000,000 Fine
Nlt 5 Years To Life Supervised Release
$100 Special Assessment

**AGENT:**                John Miles, DCI

**AUSA:**                 Z. Seth Griswold, Assistant United States Attorney

**ESTIMATED TIME OF
TRIAL:**                  6 to 10 days

**WILL THE GOVERNMENT
SEEK DETENTION IN THIS
CASE:**                   Yes

**ARE THERE DETAINERS
FROM OTHER
JURISDICTIONS:**          No